CLARE E. CONNORS #7936
United States Attorney
District of Hawaii

KENNETH M. SORENSON
CRAIG S. NOLAN
Assistant U.S. Attorneys
Room 6-100, PJKK Federal Building
300 Ala Moana Blvd.
Honolulu, Hawaii 96850
Telephone: (808) 541-2850
Facsimile: (808) 541-2958
Email: ken.sorenson@usdoj.gov

SCOTT A. CLAFFEE
LESLIE C. ESBROOK
Trial Attorneys
Counterintelligence and Export Control Section
National Security Division
United States Department of Justice

Attorneys for Plaintiff
UNITED STATES OF AMERICA

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) CR. NO. 20-00083 DKW |
| Plaintiff, | ) ) UNITED STATES' SENTENCING |
| vs. | ) MEMORANDUM; ) CERTIFICATE OF SERVICE |
| ALEXANDER MA, | ) ) |
| Defendant. | ) ) |

UNITED STATES' SENTENCING MEMORANDUM

Alexander Ma (Ma) betrayed his adopted country and his own sworn secrecy oaths, which he solemnly entered into while employed as an officer of the Central Intelligence Agency (CIA).  Ma conspired with another former CIA officer, identified as Coconspirator #1 (CC #1), and multiple intelligence officers of the People's Republic of China (PRC), to provide classified U.S. intelligence information to the Shanghai State Security Bureau (SSSB), a provincial branch of the PRC intelligence services responsible for, among other things, foreign intelligence collection.  While living in China during the early 2000s, Ma organized a meeting with SSSB officials for the purpose of providing them access to CC #1, who had also been a CIA officer serving in the Asian theater.  Ma convinced CC #1 to travel from his home in Los Angeles to Hong Kong in late March of 2001 for the purpose of meeting with SSSB officials and providing them with classified CIA secrets.   Over the course of three days spanning from March 24 through March 26, 2001, the Ma and CC #1 met with SSSB officials in a Hong Kong hotel room.  During these meetings CC #1 disclosed classified information related to, among other things, CIA operations and activities, including cover names; cryptographic information; CIA's structure and organization; the identities of CIA officers and assets; tradecraft and communication methods.

Following the March 2001 meetings, both Ma and CC #1 agreed to continue to assist the SSSB.  In February 2006, while living in Honolulu, Hawaii, Ma was

tasked by the SSSB with asking CC #1 to identify four individuals of interest to the SSSB in photographs. In March 2006, Ma forwarded the photographs to CC #1, who ultimately responded with the identities of two of the individuals.

In August 2020, Ma admitted to an undercover employee of the Federal Bureau of Investigation (FBI) that he had provided classified information to the SSSB, and that he remained willing to assist the PRC intelligence services.

I. The United States Sentencing Guidelines

Neither the defense nor the government raised any objection to the sentencing guidelines calculation in Probation's Presentence Investigation Report (PSR). The PSR determined Ma's total offense level to be 32 and his criminal history score to be 0, which places him in category I. As a result, Probation calculated a guideline sentencing range of 121 to 151 months' imprisonment. (PSR ¶¶ 43, 47, 70.) Pursuant to the Memorandum of Plea Agreement, the parties have agreed pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) to a sentence of 120 months' imprisonment, one month below the low end of the advisory guidelines range in this case. (PSR ¶ 72.) The guidelines also provide for a term of supervised release of between two and five years. (PSR ¶ 74.)

II. The Offense Conduct and Section 3553(a) Sentencing Factors

Title 18, United States Code, Section 3553(a) requires the court to impose a sentence sufficient, but not greater than necessary, to comply with the following

purposes. The sentence must reflect the seriousness of the offense, promote respect for the law, provide just punishment for offense, afford adequate deterrence to criminal conduct, and protect the public from further crimes of the defendant. 18 U.S.C. § 3553(a)(2). The court also must consider the nature and circumstances of the offense and the history and characteristics of the defendant. 18 U.S.C. § 3553(a)(1).

    A. <u>The Nature and Circumstances of the Offense</u>

  The offense conduct in this case is serious and warrants the 10-year period of imprisonment agreed to by the parties. Espionage is a critical breach of national security that involves the violation of sworn oaths and the betrayal of country and colleagues in order to advantage an adversary nation.

  Here, Ma arranged a multi-day meeting between SSSB operatives and CC #1 for the purpose of disclosing classified CIA information to the PRC, a hostile authoritarian regime. Ma took part in all three days of the meetings wherein CC #1 communicated U.S. classified information to SSSB officers involving sensitive CIA operations, sources, and methods. The disclosures were related to information CC #1 had learned while employed as a case officer with the CIA during the 1970s. Ma knew that the classified information would be used to injure the United States or to advantage of the PRC. Ma assisted CC #1 during the SSSB meetings by occasionally interjecting information and readily agreeing to count the $50,000

in U.S. currency paid to CC #1 by SSSB for the information he had provided. Ma also agreed to continue to assist SSSB in its efforts to exploit further information from CC #1.

In February 2006, SSSB officers reached out to Ma with the request that he ask CC #1 to provide the identities of certain individuals of interest to the SSSB. SSSB provided Ma with five photographs of four persons. Pursuant to this tasking Ma contacted CC #1 by both phone and email and ultimately convinced him to provide the identities of two of the individuals. The identities of these persons were at the time classified at the SECRET//NOFORN level. Once again, Ma acted as a facilitator between SSSB operatives and CC #1 resulting in the compromise of U.S. classified information.

FBI became aware of the Ma and CC #1's activities with SSSB after the March 2001 meetings with the SSSB and opened a counterintelligence investigation. Subsequently, as fortune would have it, Ma sought employment with the Honolulu Division of the FBI in 2003. The FBI made the determination to hire Ma as part of a ruse for the purpose of monitoring and investigating his ongoing ties with the SSSB. In August 2004, Ma was hired as a part-time contract linguist to work at an offsite location in downtown Honolulu. Because of multiple factors, including that the employment was notional and intended for intelligence

benefit, the government does not seek to use facts from this phase to increase Ma's sentence or sentencing guidelines range.

In sum, Ma's espionage activities were serious and damaging to U.S. national security. Ma's role in the conspiracy was primarily that of a facilitator for CC #1's disclosures of classified information sought by the SSSB. Ma's documented role as a facilitator, as opposed to being the person providing national defense information to SSSB officers, is a mitigating factor and is a strong reason why the government believes a 10-year sentence is sufficient to punish the defendant while both promoting respect for the law and providing adequate deterrence.

## B. Mitigating Factors Relating to Ma and His Conduct

While the primary offense conduct occurred in March 2001, the government was not able to charge and arrest Ma until 19 years later, in part due to reasons set forth in the government's *in camera* sealed supplement filed herein. During the intervening time, CC #1 developed advanced Alzheimer's disease and eventually passed away, leaving the comparatively less culpable Alex Ma as the only member of the conspiracy subject to accountability for the offense conduct. This is not to imply that Ma is not fully worthy of prosecution and significant punishment. He was and is. But Ma ultimately accepted responsibility for his conduct and elected

not to challenge the government's lengthy but justified delay in seeking his indictment in this case.

Additionally, Ma is nearly 72 years old with attendant health concerns. Despite this, he has agreed to serve 10 years' imprisonment. The government views his willingness to accept responsibility under these circumstances as a mitigating factor. In addition, Ma's advanced age makes him unlikely to reoffend, see 18 U.S.C. § 3553(a)(2)(C), and a sentence of 10 years' incarceration provides, under the unique fact pattern presented herein, an adequate specific deterrence, see 18 U.S.C. § 3553(a)(2)(B).

While Ma's assistance to CC #1 resulted in the communication of significant classified information to SSSB, he acted in the lessor role as a facilitator for the meetings between CC #1 and SSSB officers. The classified information disclosures in 2001 came from CC #1, and CC #1 was the person to whom SSSB paid $50,000 for his unlawful disclosures. In addition, the classified identities disclosed in 2006 also came from CC #1, whose information was specifically sought by the SSSB. Thus, in considering the characteristics of the offense and the defendant's role, we ask the Court to consider that Ma, while a critical cog in the conspiracy, was substantially less culpable than CC #1. A ten-year sentence for a defendant of advanced age who facilitated the communication by another of relatively dated classified information is, in our view, a sufficient general

deterrence for those who might consider entering into a similar conspiracy to provide national defense information to a foreign government. See 18 U.S.C. § 3553(a)(2)(B).

### C. Ma's Cooperation Efforts

Following his arrest, Ma was cooperative with agents and agreed to post-arrest interviews wherein he made multiple damaging admissions concerning his history with SSSB. Although he stopped short of admitting to espionage, his early cooperation and admissions were of assistance in lessening the amount of continued investigation necessary, limiting the issues for trial preparation, and ultimately reaching an agreement in the case.

In addition, following the entry of his guilty plea on May 24, 2024, Ma took part in multiple debriefing sessions with government representatives. During these sessions, Ma was cooperative and informative concerning his association with, and service to, the SSSB, which lasted over a decade. Ma took part in five lengthy, and sometimes grueling, sessions over the course of four weeks, some spanning as long as six hours, wherein he provided valuable information and endeavored to answer the government's inquiries to the best of his ability. While Ma at times appeared to minimize his culpability, he ultimately took ownership of his conduct and provided useful assistance to government agents. Ma did so with the understanding that there would be no motion from the government for substantial

assistance, and that any and all benefits of his cooperation were front loaded into the Rule 11(c)(1)(C) agreement entered into between the parties. In the government's balanced estimation, Ma lived up to his obligation to cooperate under the terms of the agreement, and we can report to the Court that this cooperation was assessed as useful and beneficial. The government respectfully submits that in spite of the seriousness of the offense conduct, Ma's beneficial cooperation is another mitigating factor that supports the Court's acceptance of the plea agreement in this case.

   III.   Sentencing Recommendation

   The government believes, and the defendant agrees, that a sentence of 120 months of incarceration – one month below the advisory sentencing guidelines range as calculated by Probation – is sufficient but not greater than necessary to affect the purposes of federal sentencing under these circumstances. Ten years' imprisonment is a substantial sentence. It reflects the seriousness of the espionage conducted in this case, while recognizing that the 71-year-old Ma was comparatively less culpable than CC #1, and that Ma – the only conspirator subject to prosecution – accepted responsibility for his actions and cooperated with the government. A maximum term of supervised release will provide additional safeguards relating to Ma's ability to engage in further criminal conduct.

IV. Conclusion

For the reasons set forth above, pursuant to Rule 11(c)(3)(A), the government respectfully requests that the Court to accept the parties' plea agreement under Rule 11(c)(1)(C) and impose a sentence of 120 months' imprisonment and five years of supervised release.

DATED: September 6, 2024, at Honolulu, Hawaii.

Respectfully submitted,

CLARE E. CONNORS
United States Attorney
District of Hawaii

By: */s/ Kenneth M. Sorenson*
KENNETH M. SORENSON
CRAIG S. NOLAN
Assistant U.S. Attorneys

SCOTT A. CLAFFEE
LESLIE C. ESBROOK
Trial Attorneys
National Security Division
Counterintelligence and Export
Control Section

CERTIFICATE OF SERVICE

I hereby certify that, on the dates and by the methods of service noted below, a true and correct copy of the foregoing was served on the following at the last known address:

Served Electronically through CM/ECF:

    Salina M. Kanai                                salina_kanai@fd.org
    Federal Public Defender
    300 Ala Moana Boulevard, Suite 7104
    Honolulu, Hawaii 96850

    Craig Jerome                                    craig_jerome@fd.org
    First Assistant Public Defender
    300 Ala Moana Boulevard, Suite 7104
    Honolulu, Hawaii 96850

     Attorneys for Defendant
     ALEXANDER MA

Served via E-mail:

    Sara Nieling                                      sara_nieling@hip.uscourts.gov
    U.S. Probation Officer
    300 Ala Moana Blvd., #2300
    Honolulu, Hawaii 96850

DATED: September 6, 2024, at Honolulu, Hawaii.

                                              */s/ Melena Malunao*
                                              United States Attorney's Office
                                              District of Hawaii